UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CHRISTINA JOANN PRATHER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-327-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FRANK BISIGNANO, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Christina Prather appeals the denial of her claim for Supplemental Security Income ("SSI"). [Record No. 6] She contends that the Administrative Law Judge ("ALJ") assigned to her case erred in considering the persuasiveness of Christie Kinkaid, Psy.D.'s opinion which resulted in a residual functional capacity ("RFC") that is not supported by substantial evidence. *Id.* But after reviewing the record and considering the parties' arguments, the Court concludes that the ALJ's decision is supported by substantial evidence.

**I.**

Prather filed for SSI in November 2022, alleging a period of disability beginning in January 2012. [Record No. 5-1 at 14] She was born in 1975 and was 47 years old at the time she filed her application for benefits. *See id.* at 28. ALJ Boyce Crocker issued an unfavorable decision in June 2024 following an administrative hearing. His decision became final when the Appeals Council denied review in July 2025. *Id.* at 5, 30.

- 1 -

The ALJ assigned Prather a RFC for a reduced range of light work after considering Prather's severe[1] and non-severe impairments, medical opinions, testimony, and medical records. [*See generally* Record No. 5-1.] He included the following physical limitations to that RFC: standing/walking for four hours out of an eight-hour day; occasional climbing of ramps and stairs but no ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; occasional pushing and pulling as much as she can lift and carry with bilateral upper extremities; occasional reaching overhead with bilateral upper extremities but no overhead lifting; frequent balancing; frequent bilateral handling, fingering, and feeling; no work at unprotected heights or around moving mechanical parts; no concentrated exposure to vibration and temperature extremes; and avoiding loud noise work environments. *Id.* at 19.

The ALJ provided the following mental limitations to Prather's RFC: "claimant would be able to understand, remember, and carry out instructions to perform simple, routine work tasks and use judgment and deal with changes in a work setting to make simple, work-related decisions." [Record No. 5-1 at 19–20] He further concluded that the "claimant can respond appropriately to supervision, coworkers, and work situations but should have no more than occasional interactions with supervisors/coworkers and occasional contact with members of the public." *Id.* at 20.

Prather has no past relevant work but has a high school education. [Record No. 5-1 at 28] The ALJ relied on vocational testimony to find that jobs such as inspecting and hand

---

[1]    The ALJ determined that Prather has the following severe physical impairments: "type 2 diabetes mellitus; neuropathy; bilateral carpal tunnel syndrome; obesity; anxiety disorder; depressive disorder; bilateral shoulder impingement; history of left ankle fracture; and right orbital meningioma status post two resections." [Record No. 5-1 at 17]

working/hand packing existed in significant numbers that she could perform.  *Id.* at 29. Accordingly, he found Prather not disabled during the relevant period.  *Id.* at 30.

## II.

A "disability" under the Social Security Act ("Act") is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's disability determination is made by an ALJ in accordance with "a five-step sequential evaluation process."  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (*en banc*).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

If, however, the "claimant is found to be conclusively disabled or not disabled at any step, the inquiry ends at that step."  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).

> First, the claimant must demonstrate that [she] has not engaged in substantial gainful activity during the period of disability.  Second, the claimant must show that [she] suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that [her] impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, [she] is deemed disabled.  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform [her] past relevant work, in which case the claimant is not disabled.  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as [her] age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 399 (6th Cir. 2018) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

A district court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his or her decision. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). As a result, a reviewing court is not empowered to conduct a *de novo* review, resolve conflicts in evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). If the court finds substantial evidence to support the Commissioner's judgment, it must affirm that decision *even if* it would have decided the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714.

Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

**III.**

It is uncontested that the ALJ conducted the five-step analysis required for evaluating social security disability cases. [Record No. 5-1 at 17–30] However, she argues that the ALJ erred in failing to "adequately evaluate and sufficiently explain his analysis of the restrictions assessed by Christie Kincaid, Psy.D. who performed the agency's psychological evaluation." [Record No. 6 at 1] And she claims that this failure violates 20 C.F.R. § 416.920c and that "the omission of restrictions assessed by Dr. Kincaid has resulted in an RFC that is not supported by substantial evidence." *Id.*

But the Commissioner insists that the ALJ's evaluation of Dr. Kincaid's medical opinion is supported by substantial evidence. [Record No. 10] Specifically, he argues that the ALJ found that Dr. Kincaid's opinion that Prather had a "marked limitation" in her ability to

adapt and manage herself was unsupported by her own examination and inconsistent with other medical evidence.  *Id.* at 13.

### Evaluation of Doctor Kincaid's Medical Opinion

Medical opinions' supportability and consistency "are the most important factors [ALJs] consider when [they] determine how persuasive [they] find a medical source's medical opinions."  20 C.F.R. § 416.920c(b)(2).  The ALJ must set forth a "'minimum level of articulation'" concerning how he or she analyzed the "supportability and consistency factors."  *Childers v. Kijakazi*, No. CV 5:21-285-JMH, 2022 WL 2706150, at *5 (E.D. Ky. July 12, 2022) (quoting *Miles v. Comm'r of Soc. Sec.*, 2021 WL 4905438, at *3 (S.D. Ohio Oct. 21, 2021)).

Under the supportability determination, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion."  20 C.F.R. § 416.927(c)(3).  And "[t]he better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion."  *Id.*  Stated differently, the supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. § 416.920c(c)(2).

Further, the more "consistent" a medical opinion is with the evidence from other medical and nonmedical sources in the record, the more persuasive the ALJ should find the medical opinion.  20 C.F.R. § 416.920c(c)(2).  To be sure, the consistency factor "requires the ALJ to compare the medical opinion at issue to other medical and nonmedical sources."

*Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (citation modified).

The ALJ found Dr. Kinkaid's opinion unpersuasive to the extent that she opined that Prather had *marked* limitations in social functioning due to her social anxiety and *marked* limitations in her ability to adapt to daily work activities. [*See* Record No. 5-1 at 27–28 (explaining that Dr. Kinkaid's marked restrictions are inconsistent and unsupported by the overall record).] She opined that Prather had the following limitations:

> marked impairment in adapting and responding to the pressures of normal day-to-day work activities (as related to her mental health), as demonstrated by the duration of her mental health concerns, being easily overwhelmed, and a limited work history recently. In addition, during the evaluation, her blood sugar dropped multiple times, despite her eating snacks in the session. While this is a physical condition and not typically in the purview of a psychiatric evaluation, it clearly distressed her and made it more difficult for her to concentrate each time her phone alerted her to a drop.[2] As such, it likely would impact her ability concentrate and cope at work.

*Id.* at 27. But after reviewing the "totality of the evidence," the ALJ concluded that Prather's mental impairments "result in no more than moderate limitations." *Id.*

**Supportability:** Prather takes issue with the ALJ's statement that "Dr. Kincaid's conclusions of marked restrictions are wholly unsupported by the consultative psychological exam report and were plainly based on the claimant's subjective complaints alone." [Record Nos. 6 at 9 and 11 at 1] She claims that the ALJ provided no logical bridge to this conclusion and that he ignored and misrepresented the record in making this statement. [Record No. 6 at

---

[2]   Ultimately, Dr. Kinkaid terminated the assessment before reaching the abstract reasoning and social judgment portions of the exam "due to decreasing sugar levels triggering glucose monitoring alarms." [Record No. 5-1 at 24]

9–10] Finally, she asserts that the ALJ impermissibly discounted Dr. Kincaid's opinion related to her diabetes symptoms as outside her area of specialty. *Id.* at 10.

The Commissioner disagrees,[3] arguing that the ALJ raised concern about the lack of objective evidence supporting Dr. Kincaid's conclusion that Prather had marked limitations. [Record No. 10 at 10–11] For example, Dr. Kinkaid's report included the following observations: Prather "was appropriately dressed and groomed, she was cooperative, her speech was coherent, her thought processes were logical, there was no difficulty paying attention, her affect was normal if dysthymic, and she was alert despite repeated interruptions from [her] glucose monitor." *Id.* at 11.  Considering these observations, the Commissioner asserts that "a reasonable person could agree that Dr. Kincaid over-relied on Plaintiff's subjective symptoms" rather than her own observations, as reflected in her report. *Id.* 11–12.

As a refresher, the supportability determination considers how much objective, relevant medical evidence a medical opinion relies on and the extent to which the examiner explains how he or she reached a conclusion. *See* 20 C.F.R. §§ 416.920c(c)(2), 416.927(c)(3).  After summarizing Prather's testimony and mental health observations, the ALJ found Dr. Kinkaid's opinion that she had marked limitations in social functioning and in her ability to adapt lacked supportability. [*See* Record No. 5-1 at 20–28.] As he noted, Prather testified that she was

> living with two other adults and a five-year-old child, watering and feeding two dogs and three cats, attending to personal care needs independently with an occasional need for physical assistance with dressing, occasionally using the stove to cook, preparing simple meals for herself daily, using a microwave, setting alarms as reminders to take medication, doing laundry once a week, completing light housecleaning weekly, washing dishes, working puzzles, listening to music, playing videogames, reading, driving occasionally, shopping

---

3        He further insists that, despite Prather's arguments to the contrary, Dr. Kincaid admitted that her opinion (drops in blood sugar could contribute to her mental symptoms) was outside her specialty. *Id.* at 8.

in [public] with breaks to sit, and socializing with others weekly in person, by text, or over the phone.

*Id.* at 21.

The ALJ also identified clinical observations in provider summaries from January 2022 through January 2024, indicating that "[a]ll other findings were also unremarkable, including psychological." *Id.* at 22. Specifically, in November 2023 and January 2024, neurology determined that Prather's mental findings were normal and unremarkable. [Record No. 5-1 at 24–25] Following her surgery to remove an orbital tumor in January 2024, her discharge notes demonstrated normal psychiatric exams. *Id.* at 25. And two weeks later, the provider documented normal mental findings. *Id.*

The ALJ further outlined Dr. Kinkaid's own observations in her report that Prather's affect was normal despite dysthymic mood and that she was appropriately dressed and groomed, cooperative, coherent, logical, focused, and alert. *Id.* at 24. He also noted that Prather's individual mental therapy sessions into February 2024 often reported routinely normal mental status findings. *Id.* at 27. Because Dr. Kinkaid's marked limitation opinion lacked support with her own observations, Prather's testimony of her daily activities, and other providers' observations of her mental health, the ALJ concluded that the opinion relied too heavily on her subjective complaints and lacked supportability. *See id.*

In short, the ALJ provided a minimum, but sufficient, level of articulation which demonstrated how he assessed the supportability factor.

**Consistency:** Prather claims that the ALJ erred in considering the consistency factor because he cherry-picked which evidence to rely on in the record on while ignoring others. [Record No. 6 at 12 (citing *James v. Comm'r of Soc. Sec.*, No. 1:25-cv-0468, 2026 WL 194098,

at *9 (N.D. Ohio Jan 26, 2026) (quoting *Young v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 644, 649 (E.D. Mich. 2004)).] She asserts that her individual mental therapy sessions did not indicate "routinely normal mental status findings" as the ALJ concluded. *Id.* She supports this assertion by listing dates where her treatment notes show some degree of mental impairment. *Id.*

The Commissioner contends that the ALJ considered the consistency factor when he outlined the normal and unremarkable mental status findings from Prather's other providers. [Record No. 10 at 6] And in any event, he insists that "the mental limitations in the RFC were consistent with the prior administrative medical findings—which Plaintiff does not challenge—[provide] substantial evidence further supporting the ALJ's rejection of Dr. Kincaid's opinion." *Id.* at 6–7 (citing *Givhan v. Comm'r of Soc. Sec. Admin.*, No. 1:13 CV 611, 2015 WL 3408006, at *9 (N.D. Ohio May 27, 2015)).

The undersigned agrees with the Commissioner's position on this point. The ALJ sufficiently addressed the consistency factor when he reviewed the other medical evidence and opinions, indicating Prather's mental status was normal and unremarkable, as discussed above in the supportability section. And here, where her RFC (which includes mental limitations) is independently supported by substantial evidence, the Court is not inclined to pick apart the ALJ's conclusion that her individual mental therapy sessions demonstrated "routinely normal mental status findings" by counting just how many sessions constitute "routinely." That is precisely the type of second guessing the substantial evidence standard avoids.

## IV.

As noted previously, a reviewing court does not try the case *de novo*. And even if it would resolve the dispute differently, "the Commissioner's decision must stand if supported

- 9 -

by substantial evidence." *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). In the present case, the ALJ's opinion is supported by ample evidence and consideration of all material facts. The Court cannot re-weigh the evidence in a manner such as to come to a different conclusion, even one which the evidence could have supported.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Plaintiff Christina Prather's motion for judgment [Record No. 6] is **DENIED**.

2. Defendant Commissioner of Social Security's motion for judgment [Record No. 10] is **GRANTED**.

3. This action is **DISMISSED** and **STRICKEN** from the docket.

Dated: May 19, 2026.



Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky